IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANGELA D. GASKIN,
     Plaintiff,

vs.                                  Case No. 5:07cv197/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

On August 12, 2004, Plaintiff filed applications for DIB and SSI, and in each application she alleged disability beginning June 27, 2004 (Tr. 12).[1]  The applications were denied initially and on reconsideration (Tr. 36–37), and Plaintiff then requested review and a hearing before an administrative law judge (ALJ) (Tr. 49).  Plaintiff's administrative hearing, at which she was represented by counsel, was held on January 22, 2007 (Tr. 344–86).  Also appearing and testifying at Plaintiff's hearing were Dr. Nancy M. Tarrand and Dr. Woodrow Janese, impartial medical experts, and Wallace A. Stanfill, a vocational expert (Tr. 12, 347–56, 356–65, 380–84).  On February 8, 2007, the ALJ found that Plaintiff was not disabled, as defined in the Act, at any time through the date of his decision (Tr. 9–22).  On June 21, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 4–8).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.     FINDINGS OF THE ALJ

On February 8, 2007, the ALJ made several findings relative to the issues raised in this appeal (Tr. 12–22):

1)   Plaintiff met the insured status requirement of the Act through March 31, 2005. Thus, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and DIB.

2)   Plaintiff has not engaged in substantial gainful activity since June 27, 2004, the date she alleges she became disabled (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), and 416.971 *et seq.*).

3)   Plaintiff has the following severe impairments:   status post cerebral aneurysm and an organic mental disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4)   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on November 9, 2007 (Docs. 11, 12).

5)      Plaintiff has the residual functional capacity (RFC) to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday.  She also has mental work-related limitations, as testified to by Dr. Tarrand.

6)      Plaintiff is capable of performing her past relevant work as a file clerk.  This work does not require the performance of work-related activities precluded by her RFC (20 C.F.R. §§ 404.1565 and 416.965).

7)      Plaintiff has not been under a "disability," as defined in the Act, from June 27, 2004, through February 8, 2007, the date of the ALJ's decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the

Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment,

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416).  Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.      Personal/Employment History

Plaintiff was born on January 5, 1960, and was 44 years of age on the date she alleges she became disabled (Tr. 365).  She has a ninth-grade education and past relevant work experience as a fire watcher (light, semiskilled), cashier (light, semiskilled), waitress (light, semiskilled), welding parts clerk (medium, semiskilled), laborer (heavy, unskilled), and file/mail clerk (light, unskilled) (Tr. 21, 365).  Plaintiff alleges disability since June 27, 2004, based on a variety of medical conditions, including status post-cerebral aneurysm and an organic mental disorder (Tr. 14).  The aneurysm occurred on or about June 27, 2004, and Plaintiff underwent a craniotomy on July 19, 2004 (Tr. 227).

B.      Relevant Medical History

The ALJ's decision contains a detailed discussion of Plaintiff's medical history, and it need not be repeated here because Plaintiff raises only two issues on appeal — each of which can be addressed without reference to Plaintiff's medical history.

However, as noted above, in this case the ALJ sought the assistance of a medical expert, Dr. Tarrand, who testified at Plaintiff's hearing before the ALJ, and a brief summary of her testimony is warranted.  Dr. Tarrand testified that Plaintiff has a history of alcohol abuse and an intra-cranial aneurysm (Tr. 16).  In January 2005, Plaintiff was tested and assessed with I.Q. scores ranging from 64–69, but Dr. Tarrand believed these scores were of questionable validity because Plaintiff may have engaged in drug and alcohol abuse in close proximity to the I.Q. testing, and Plaintiff did not appear to be "completely straightforward" during the testing (Tr. 16, 259, 348–49).  For example, Dr. Tarrand noted that on the day Plaintiff was tested she denied "all current and prior use of alcohol and substances," but Plaintiff's sister advised the examiner that Plaintiff had consumed alcohol the night before and had used drugs over the weekend (Tr. 268, 348).  Plaintiff also advised a physician

on December 8, 2004, that she "does not drink alcohol" (Tr. 305).  However, as noted by Dr. Tarrand, the record contains at least one instance of "drug seeking" behavior by Plaintiff, as well as a contradictory report by Plaintiff on November 27, 2004, that she drinks two to three alcoholic beverages per day (*see* Tr. 16, 183, 259, 348, 352).  Dr. Tarrand also testified, that although Plaintiff alleges an onset of disability of June 27, 2004, she did not complain of cognitive problems on December 8, 2004 (*see* Tr. 16, 305).  Further, the court notes that the December 8, 2004 examination of Plaintiff, referenced by Dr. Tarrand, reveals the observations of Kamel Elzawahry, M.D., FACP, FAAN, the examiner:

> [Plaintiff is] [o]riented in time, person and place.  [She] [o]beyed simple and complex commands.  Immediate recall, short term memory and long term memory all were examined and normal.  Ability to calculate, attention span, judgement and ability to abstract all within normal limits.  Affect and mood are normal. . . .

(Tr. 305).

Dr. Tarrand then opined that Plaintiff has mental impairments, but they do not meet or equal a listed impairment (Tr. 16, 347–53).[3]  Further, she opined that Plaintiff has the following mental limitations:  mild difficulties in her ability to follow work rules, get along with co-workers, interact with supervisors, and understand, remember and carry out *simple* job instructions; mild to moderate restrictions in her ability to use judgment; moderate restrictions in her ability to deal with the public, maintain attention and concentration, deal with work stress, function independently, demonstrate reliability, and understand, remember and carry out *detailed* instructions; and marked restrictions in her ability to understand, remember and carry out *complex* job instructions (Tr. 350–51).  Dr. Tarrand also opined that Plaintiff can perform one and two-step operations, respond appropriately to supervision and co-workers, perform routine repetitive tasks, and function in a low stress work setting where public contact is minimal (Tr. 351).

V.   DISCUSSION

In finding Plaintiff "not disabled," the ALJ determined at step four of the sequential evaluation that Plaintiff could return to her past relevant work as a file/mail clerk.  Plaintiff contends that the ALJ's step four determination is erroneous because:  1) the "ALJ failed in his duty to

---

[3]As previously noted, the ALJ also sought the assistance of another medical expert, Woodrow Janese, M.D. (*see* Tr. 14–16, 356–60).  He, too, opined that Plaintiff's impairments did not meet or equal a listed impairment (*id.*).

determine without a doubt that [Plaintiff's] past work as a file clerk was [substantial gainful activity]," and 2) the ALJ erred in finding that Plaintiff could return to her past work as a file clerk without making findings regarding the physical and mental demands of that work (Doc. 16 at 16, 19).

The Regulations provide that individuals who, despite their impairments, retain the RFC to perform their past relevant work will not be considered disabled. *See* 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled."). The Regulations further provide that work performed by a claimant will be considered "past relevant work" at step four if the work was performed within the last fifteen years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity (SGA).[4] 20 C.F.R. § 404.1565(a); *see also* Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984) (past work must be substantial to qualify for disability benefits); Lauer v. Bowen, 818 F.2d 636, 639 (7th Cir. 1987) (to be considered past relevant work, a claimant's previous work must "rise to the level of substantial gainful activity"); Melville v. Apfel, 198 F.3d 45, 53 (2d Cir. 1999) (a claimant's past work experience, especially part-time work, is not relevant unless, *inter alia*, it was SGA); Roberts v. Apfel, 27 F. Supp. 2d 1295, 1299 (N.D. Ala. 1998) (the ability to do previous work will not establish disability unless that previous work was itself substantial and gainful).

"Substantial gainful activity" is defined as work that "(a) [i]nvolves doing significant and productive physical or mental duties, and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510. The Regulations further provide:

> Substantial gainful activity is work activity that is both substantial and gainful:
> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized . . . .

---

[4]In the instant appeal, Plaintiff contests only the third requirement, that is, whether her past work as a file/mail clerk constitutes SGA.

20 C.F.R. § 404.1572.

Additionally, relevant to Plaintiff's claim in the instant case, the Regulations contain earnings guidelines to aid in determining whether past work constitutes SGA.  In pertinent part, the Regulations state that for work performed between January 1990 and June 1999, average monthly earnings of more than $500.00 will generally constitute SGA.  *See* 20 C.F.R. § 404.1574(b).

Finally, in assessing the importance of evidence of past work, the Commissioner has provided that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."   Social Security Ruling (SSR) 82-62.  Furthermore, assessment of a claimant's ability to do past work requires a careful appraisal of:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62.

Within this framework, the court will review Plaintiff's claims.

A.       Whether Plaintiff's Past Relevant Work as a File/Mail Clerk Constitutes SGA

Although Plaintiff contends otherwise, the record contains substantial evidence that she performed the file/mail clerk job at the SGA level.[5]  In her April 1999 work report, Plaintiff indicated that she worked as a mail clerk at the Department of Motor Vehicles (DMV) from July 1994 through July 1995 (Tr. 88, 92).  Plaintiff also indicated in the report that she worked eight hours a day, five days a week, at a rate of $4.25 per hour, and that her job duties included lifting, carrying, and sorting mail; using machines, tools, or equipment; using technical knowledge or skills; writing reports or completing forms; and using a computer (Tr. 92).  Similarly, at Plaintiff's hearing before the ALJ, she testified that the job entailed filing and sorting through mail and traffic citations

---

[5]Contrary to Plaintiff's suggestion, the ALJ was not required to determine "without a doubt" that Plaintiff's past work was SGA (*see* Doc. 16 at 19).  There must be "substantial evidence" (i.e.,"such relevant evidence as a reasonable person would accept as adequate to support a conclusion") to support the findings of the ALJ.  Richardson, 402 U.S. at 389; Carnes, 936 F.2d at 1218.

(*see* Tr. 380).  Thus, the information provided by Plaintiff clearly establishes that her prior work involved the performance of significant and productive physical and/or mental duties, and that the work was done for pay or profit.  Additionally, although Plaintiff testified that the job was "temporary" (*see* Tr. 380), her work report reflects that she held the job for approximately one year (Tr. 88), which was long enough for Plaintiff to learn how to do the job.

Moreover, the information provided by Plaintiff in her work report (i.e., that she worked 40 hours per week at $4.25 per hour) represents earnings of $170 per week, or approximately $680.00 per month, far in excess of the $500 monthly SGA level.  Nevertheless, Plaintiff contends that the mail clerk position did not meet the SGA level (Doc. 16 at 19).  Plaintiff's argument is premised on the fact that her yearly earnings record for 1994 reflects a total income of $2911.26 (*see id.*; Tr. 64). Thus, Plaintiff argues that she did not meet the threshold amount because $2,911.26 / 6 months (i.e., July – December 1994) = $485.21 per month.  However, Plaintiff did not indicate on the work report when in July 1994 she started the job (*see* Tr. 88).  If, for example, Plaintiff began working near the end of July, or for only one week out of approximately four weeks in July, Plaintiff would have been paid over the threshold amount ($2,911.26 / 5.25 months = $554.53); if she began the job in mid-July, she would have been paid over the threshold amount (i.e., $2,911.26 / 5.5 months = $529.32); and even if Plaintiff worked all but one week in July (or 3/4ths of the month), she still would have been paid over the threshold amount ($2,911.26 / 5.75 = $506.31).  Furthermore, Plaintiff's yearly earnings record for 1995 reflects total earnings of $6,296.09 (Tr. 64).  This represents an average monthly earnings of $524.67, which is also above the $500 monthly SGA level.  Notwithstanding, Plaintiff's attorney asserts in the instant appeal that Plaintiff held two jobs in 1995, and the later job paid more than the mail clerk job, "so we can deduce that she most likely" did not meet the threshold SGA level (*see* Doc. 16 at 19).  Plaintiff's argument is unpersuasive.  This court cannot "deduce that she most likely" earned less than $500.00 per month with the DMV, especially considering that Plaintiff's attorney is making an argument that contradicts his client's own written report, in which she specifically states that the mail clerk job was 40 hours a week, for approximately one year, at the rate of $4.25/hour.  Plaintiff's work report (in contrast to her attorney's speculative argument) clearly constitutes substantial evidence to support the ALJ's conclusion that Plaintiff's work at the DMV was SGA.  *See* SSR 82-62 (discussing the importance

of a claimant's statements regarding past work and noting that "[t]he claimant is the primary source for vocational documentation").  Thus, the ALJ did not err in concluding that Plaintiff's past work as a file/mail clerk constituted SGA and was past relevant work.

        B.      Consideration of the Demands of Plaintiff's Past Work

        Plaintiff contends that the ALJ failed to consider the physical and mental demands of her past relevant work as a file/mail clerk (*see* Doc. 16 at 16–18).  Plaintiff further contends that the RFC adopted by the ALJ, which is based upon the opinions of Dr. Tarrand, is inconsistent with the physical and mental demands of the file/mail clerk job (*id.*).

        To aid in the analysis of claimant's past work, the ALJ may rely upon a vocational expert (VE) to offer:

> evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as claimant actually performed it or as generally performed in the national economy.  Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of [her] past work.

20 C.F.R. § 404.1560(b)(2).

Not only may a VE may be called upon to evaluate a claimant's past work, the VE may also be asked to compare whether the requirements of past work correlate with the abilities necessary to perform a job listed in the Dictionary of Occupational Titles (DOT).  *See* Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003).

        Here, based on Plaintiff's testimony concerning the nature of her prior work, the VE determined that Plaintiff's past work as a file or mail clerk was light (physical) and unskilled (mental) work (Tr. 380–81).  The ALJ adopted these findings (*see* Tr. 21).  Thus, unlike Plaintiff's contention, the ALJ considered both the physical and mental demands of Plaintiff's past relevant work.  Additionally, relying on the testimony of Dr. Tarrand, the ALJ determined Plaintiff's mental RFC (which is set out fully, *supra*) (Tr. 17, 382).  Further, the ALJ relied on the VE's testimony in determining whether Plaintiff, based on her RFC, could return to her work as a file/mail clerk (Tr. 21, 382).  More specifically, at the administrative hearing, the ALJ posed a hypothetical question to the VE that included all of the limitations he ultimately found credible and supported by the record (*id.*).  The VE responded that a claimant with these limitations could perform Plaintiff's past relevant work as a file/mail clerk (Tr. 382–83), and the ALJ properly relied on this response (Tr. 21).

Finally, although Plaintiff contends otherwise, the VE's testimony regarding the file/mail clerk position is consistent with the DOT.  According to the DOT (*see* DOT #209.687-026), a mail clerk job is a light job, and the mail clerk is responsible for, among other things, sorting incoming mail for distribution, dispatching outgoing mail, opening envelopes, stamping receipt of incoming mail, and sorting mail according to destination and type.  This description is consistent with Plaintiff's description of her work, both on the April 1999 work history report and during her testimony at her hearing before the ALJ.  It is also consistent with the VE's testimony that the file/mail clerk job was a light, unskilled job (Tr. 381).

Likewise, although the DOT itself does not specifically identify jobs as either skilled, semiskilled, or unskilled, it does list the specific vocational preparation (SVP) needed to learn a particular job.  SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  *See* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/ DOTAPPC.HTM (last visited August 12, 2008).  For the position of mail clerk, the DOT lists a level two SVP, indicating that a mail clerk's general work tasks can be learned after anything beyond a short demonstration up to and including one month.  *See id.*; DOT #209.687-026.  Moreover, a level two SVP is consistent with the way the Regulations define unskilled work.  *See* 20 C.F.R. § 404.1568(a) (noting, in pertinent part, that an unskilled job requires little or no judgment and can be learned on the job or in a short period of time, such as 30 days).  Finally, consistent with the VE's description of the mail clerk job as unskilled, the DOT indicates the mail clerk job merely involves performing repetitive, short-cycle work.  *See* DOT #209.687-026.

Therefore, the ALJ did not err in determining that Plaintiff was not disabled because he properly found that Plaintiff's past work as a file/mail clerk was "past relevant work," he considered the physical and mental demands of that work, and he determined — based on Plaintiff's RFC and other factors — that Plaintiff could return to that work.  The ALJ's findings are supported by substantial evidence in the record, including Plaintiff's work history report and her testimony, Dr. Tarrand's testimony, the VE's testimony, and the DOT.

Thus, for the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d

at1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 13<u>th</u> day of August 2008.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**